IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KRISTINE K. YATES,

    Plaintiff,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; et al.,

    Defendants.

Case No. 6:17-cv-1819-AA
**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Kristine Yates asserts that defendants have violated her rights by constructing a solar energy array on the property next to her home. Defendants Silverton Land Co., LLC; Silverton Solar, LLC; and Dick Anderson Construction Company have filed motions for summary judgment (docs. 120, 145, 112). Silverton Land also filed a motion to strike (doc. 142). For the reasons set forth below, defendants' summary judgment motions are granted and Silverton Land's motion to strike is denied in part and granted in part.

Page 1 – OPINION AND ORDER

## BACKGROUND

The following facts are undisputed. Plaintiff lives in Silverton, Oregon on Exclusive Farm Use zoned ("EFU") land. In the summer of 2017, a solar array was built on an adjacent property to the north. Plaintiff alleges that construction interfered with her use and enjoyment of her property and caused flooding on her property. Plaintiff first filed a complaint in November 2017, alleging damages incurred from the construction of the solar array.

The Court has previously dismissed the other defendants for lack of jurisdiction or failure to state a claim leaving only Silverton Land, Silverton Solar, Dick Anderson Construction Company ("DA Construction"), and the Marion County Planning Department. (Docs. 56, 110). This Court also dismissed plaintiff's claims for Equal Protection Clause violations, fraud, and civil conspiracy. *Id.* The remaining claims include nuisance, trespass, and Fourteenth Amendment violations under 42 U.S.C. § 1983.

## STANDARD OF REVIEW

When considering a motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

Silverton Land, Silverton Solar, and DA Construction now move for summary judgment on plaintiff's trespass and nuisance claims. Marion County's motion for summary judgment on plaintiff's due process claim will be addressed in a separate opinion. The motions for summary judgment assert that plaintiff has failed to offer evidence to show a genuine issue of material fact for both her nuisance and trespass claims.

I.  *Pro Se Standard*

Plaintiff argues, in part, that it would be inappropriate to grant defendants' motions in light of her pro se status. Because pro se plaintiffs do not have the benefit of legal counsel, their initial pleadings are "held to less stringent standards" than those drafted by lawyers. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n. 4 (9th Cir.2011). But at summary judgment, the elements a plaintiff must prove, and a plaintiff's burden of proof, are not relaxed simply because she is

appearing pro se. *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules"). As such, plaintiff is not entitled to preferred treatment at this stage in the proceedings.

## II.  *Silverton Land and Silverton Solar*

Silverton Land owns the property on which the solar array was installed. Silverton Solar owns and holds the conditional use permit for the solar array. Both defendants argue that they are entitled to summary judgment because plaintiff has no evidence that they committed the alleged trespass or nuisance or that they were responsible for the construction activities that plaintiff alleges caused the torts.

Silverton Land asserts that it leased the property before construction began. Under the terms of the lease, Silverton Land transferred all its "rights, interests, estates, and appurtenances" in the land, all rights in any improvements on the land, and all rights in any adjacent streets and road, all rights in any easements, and any "vehicular and heavy equipment access" to the land. Leibach Decl. Ex. 1 at 1, Jan. 25, 2019. Both defendants provided evidence that they did not perform construction work on the property and that they did not have management control or responsibility over the construction and installation of the solar array.

Plaintiff does not allege or provide evidence that either defendant took an action that directly caused either the alleged nuisance or the alleged trespass.[1]

---

[1] The Court need not determine whether the activities that plaintiff complains of do constitute a nuisance or trespass to resolve Silverton Land's and Silverton Solar's summary judgment motions. As explained below, neither defendant is responsible for the activities.

Page 4 – OPINION AND ORDER

Instead, she argues that Silverton Land is liable for torts allegedly committed on its land, regardless of its lessor status. Similarly, plaintiff argues that Silverton Solar is liable because it obtained the permit that allowed the solar array to be built.[2]

Generally, nuisance and trespass require an action by the defendant, or at least actions by a party that defendant is responsible for. *See Martin v. Union Pac. R. Co.*, 256 Or. 563, 565 (1970) (explaining that a trespass requires an intrusion caused by a defendant's "intentional, negligent, reckless or ultrahazardous conduct"); *Mark v. State (Mark II)*, 191 Or. App. 563, 573 (2004) (explaining that a private nuisance is a defendant's "unreasonable non-trespassory interference with another's private use and enjoyment of land"); *Restatement (Second), Torts* §§ 834-840A (1965) (describing persons liable for nuisance). Plaintiff has not provided evidence to show that Silverton Land is responsible for the actions of construction workers on the property. Similarly, the fact that Silverton Solar obtained the permit that ultimately allowed construction to happen does not show that it had any control over or responsibility for the construction workers' actions.

Silverton Land acknowledges that landowners who do not themselves engage in activity constituting a nuisance may nevertheless be liable for the acts of third parties that create a nuisance on their land if they "both (1) know that the activity is being carried on and will involve an unreasonable risk of causing the nuisance and

---

[2] Silverton Solar points out that plaintiff's response to its motion was 11 days late and asks the Court to strike the response. Although the Court need not consider an untimely response in deciding whether to grant summary judgment, *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1519 (9th Cir. 1983), the Court will not strike plaintiff's response. As explained below, even considering the arguments and evidence plaintiff provides, Silverton Solar is entitled to summary judgment.

Page 5 – OPINION AND ORDER

(2) consent to the activity or fail to exercise reasonable care to prevent it." *Mark v. State Dep't of Fish & Wildlife (Mark I)*, 158 Or. App. 355, 362-63 (1999) (citing *Restatement (Second), Torts* §838 (1979)). However, this rule is generally limited to situations where the landowner has the ability to control activities on the land, including the relevant acts of third parties.

In *Mark I*, the Oregon Court of Appeals held that plaintiff sufficiently alleged that defendants were liable for actions of the public on a state-owned wildlife areas based on allegations that defendants "have the authority to exercise control over the behavior of the members of the public who congregate in the wildlife area and that defendants . . . failed to exercise control over nudity in the wildlife area." *Mark I*, 158 Or. App. at 363.

*Mark I* also relied on *Fleischner v. Citizens' Real-Estate & Inv. Co.*, 25 Or. 119 (1893), which concerned a landlord's liability for a nuisance that was created on a property after the landlord leased it. In *Fleischner*, the Oregon Supreme Court observed that "a landlord . . . is not responsible for a nuisance occurring after the execution of the lease," and instead, the tenant "is liable to third persons for injury from the creation or maintenance of any nuisance upon the leased premises[.]" 25 Or. at 126. The court recognized three exceptions to the general rule: (1) when the landlord has expressly agreed to keep the premises in repair; (2) when the nuisance existed on the property before it was leased; and (3) when the landlord "rents premises for a purpose which, in the very nature of things, would become a public nuisance." *Id.* at 126-27.

Here, there is no evidence that Silverton Land had the ability to control the activities of construction workers on the property. Further, under the general rule in *Fleischner*, Silverton Land is not responsible for the alleged nuisance because it occurred after Silverton Land leased the property and plaintiff has not provided evidence to support one of the exceptions. First, Silverton Land did not agree to keep the premises in repair. To the contrary, the lease agreement expressly provides that Silverton Land "shall have no obligation to maintain or repair the Premises." Leibach Decl. Ex. 1 at 5, Jan. 25, 2019. Second, there is no evidence, nor does plaintiff allege, that a nuisance existed before the property was leased. Third, there is limited evidence of the purpose for which Silverton Land leased the property. The lease agreement references "improvements," including "solar power generation and transmission related equipment" constructed an installed on the property for the tenant, but does not directly state that the land is leased for that purpose. *Id.* Ex. 1 at 1. But even assuming Silverton Land had leased the property so that another entity could build a solar array on it, neither a solar array nor the construction of a solar array is inherently likely to become a nuisance. Accordingly, both defendants' motions for summary judgment are granted.[3]

---

[3] Silverton Land has also filed a motion seeking an order striking four of plaintiff's exhibits pursuant to Federal Rule of Civil Procedure 56(c)(2). Rule 56(c)(2) permits a party to object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." In ruling on a motion for summary judgment, courts consider the admissibility of the proffered evidence's contents, not its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Silverton Land asserts that the exhibits are inadmissible because they constitute unauthenticated hearsay for which no exception applies.

Plaintiff offers exhibits 1, 3, and 6 to show that Silverton Land owns and has leased its interest in the property. The relevant information from those exhibits is also found in the declaration of Patrick

Page 7 – OPINION AND ORDER

## III. *DA Construction*

DA Construction built the solar array and other portions of the solar facilities pursuant to a contract with non-party general contractor Cypress Creek EPC, LLC. DA Construction began working on the solar array on July 31, 2017 and completed its work on August 25, 2017. It removed its equipment, construction debris, and leftover construction materials by October 5, 2017.[4] Plaintiff alleges that construction activities constituted a nuisance and caused a trespass onto her land.

Specifically, plaintiff alleges that DA Construction caused a nuisance by placing portable toilets, a mobile office, and construction debris in her line of sight, by driving trucks and other vehicles by her property, and by using a vibrating roller to compact dirt. Plaintiff alleges that DA Construction caused a trespass by violating

---

Leibach and the exhibits attached to that declaration, which Silverton Land offered. For example, exhibit 1 to the Leibach declaration is a copy of the lease agreement between Silverton Land and the primary tenant. Plaintiff's exhibit 6 is an excerpt from a signed copy of the same lease agreement. Accordingly, the material contained in plaintiff's exhibits 1, 3, and 6 are properly before the Court through the Leibach declaration. Silverton Land's objections to these exhibits are overruled.

Exhibit 8 consists of internet articles about the potential health and environmental risks from solar arrays. The Court need not (and did not) consider this evidence to rule on Silverton Land's summary judgment motion, because plaintiff raised this theory of nuisance for the first time in her response to Silverton Land's summary judgment motion. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("our precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court"). Silverton Land's objection to this exhibit is sustained.

[4] The parties disagree about the period that DA Construction was engaged in construction-related activities on the solar array property, but plaintiff has not established that this dispute of fact is genuine. DA Construction provided a declaration asserting that it was present on the site from the end of July to early October 2017. Plaintiff and her husband averred that construction activities occurred from April 2016 to June 2018. However, plaintiff provided no evidence that DA Construction was on-site outside the time period that DA Construction admits to and her position appears to be based on her erroneous assumption, discussed in more detail below, that DA Construction was responsible for all subcontractors working on the solar array.

Page 8 – OPINION AND ORDER

setback rules, causing increased traffic near her property, and causing flooding on her property.

### 1. *Nuisance*

Plaintiff alleges that DA Construction "intentionally and maliciously placed 'port-potties' . . . directly to the rear of Plaintiff's real property and homestead, on the southernmost part of the Solar Array," when other locations were available, placed a mobile office trailer near plaintiff's property, and left behind construction debris near plaintiff's home, all of which were within view from her property. Am. Compl., ¶¶ 115-17. Plaintiff also asserts that DA Construction "induced a constant traffic of semi trucks [sic], and other vehicular traffic," interfering with her property enjoyment and constitutional rights, and used a vibrating compaction roller to compact dirt "induc[ing] severe ground vibrations causing window rattling and shaking" of plaintiff's home. *Id.* at ¶¶ 118-19.

First, DA Construction argues that plaintiff has provided no evidence that it placed portable toilets or a mobile office or left debris in plaintiff's line of sight. To support this argument, DA Construction provided a declaration from Dustin Anderson, who managed the solar array construction project for DA Construction. According to Anderson, the company did not place its portable toilets or offices behind plaintiff's house. Instead, DA Construction placed them in the southeast corner of the solar array property.[5] Anderson also asserts that the company removed all construction-related debris by October 5, 2017. In response, plaintiff provided

---

[5] Plaintiff's property is southwest of the solar array property.

Page 9 – OPINION AND ORDER

photographs of portable toilets, trailers, and construction materials that she asserts were placed behind her house and property. Plaintiff asserts that DA Construction "and, or second tier subcontractors" placed them there. Resp. (doc. 124) at 4.

Although the photographs show that portable toilets, trailers, and construction materials were placed near her property, they do not indicate who placed them there. DA Construction asserts that Cypress Creek EPC hired many subcontractors, including DA Construction. DA Construction provided evidence that at least one other company, Massachusetts Electric Construction Company ("Mass. Electric") worked as a subcontractor on the solar array. Plaintiff argues that DA Construction is responsible for any construction activity on the property because its contract with Cypress Creek EPC makes DA Construction responsible for all the other subcontractors. However, the contract makes DA Construction responsible only for the subcontractors that it hired to help with its work.

In sum, plaintiff provided no evidence from which a reasonable jury could infer that DA Construction was responsible for putting toilets or a mobile office or leaving debris in plaintiff's line of sight.

Second, DA Construction argues that plaintiff's nuisance claim, based on increased traffic and soil compaction, fails as a matter of law. Under Oregon law, "[a] private nuisance is an unreasonable non-trespassory interference with another's private use and enjoyment of land." *Mark I*, 158 Or. App. at 360. To establish a nuisance claim, "[p]laintiff[] must . . . allege facts which show that the invasion was unreasonable in the sense that the harm to plaintiff[] is greater than [she] should be

required to bear in the circumstances." *Jacobson v. Crown Zellerbach Corp.*, 273 Or. 15, 19 (1975). Oregon courts consider five factors in determining a private nuisance: "'(1) the location of the claimed nuisance; (2) the character of the neighborhood; (3) the nature of the thing complained of; (4) the frequency of the intrusion; and (5) the effect upon the enjoyment of life, health and property.'" *Mark II*, 191 Or. App. at 573 (quoting *Smith v. Wallowa County*, 145 Or. App. 341 (1996)).

Factors one and two of the nuisance test, location of the claimed nuisance and character of the neighborhood, are neutral factors. Plaintiff's land, as well as the land that the solar array was installed on, are zoned EFU. Most of the nearby properties appear to be used for agricultural and rural residential purposes. This means that plaintiff and surrounding residents are accustomed to a quiet and agriculturally rooted community compared to other areas. Thus, a large construction project and the presence of a solar array are more significant disturbances in a rural area like plaintiff's neighborhood in comparison to other areas. On the other hand, land that is actively farmed can also experience seasonal spikes in traffic from heavy farm equipment.

Factors three and four, the nature of the thing complained of and the frequency of intrusion, both favor DA Construction.

Plaintiff's complaints of increased traffic on the road near her home cannot be considered unreasonable because she merely alleges that the road is being used according to its design. As Oregon courts have recognized, allowing landowners to bring claims of nuisance against defendants for availing their common right to use

roadways would impose "an intolerable burden . . . upon public transportation, travel and commerce." *Jacobson*, 273 Or. at 20. The frequency of the intrusion from traffic is also not unreasonable because it only occurred during the construction period and will not begin again in the foreseeable future.

DA Construction's use of a vibrating roller did not cause an intrusion that was unreasonable in nature or frequency. Plaintiff alleges that vibrations from the compact roller rattled her windows and shook her house, but does not allege that it caused damage. And it is undisputed that the equipment was used for a short period of time – roughly seven days throughout the 9.7-acre solar array property, not just in portions of the property near plaintiff's home. Additionally, because the construction is now completed, the use of the machinery has ceased and will not begin again in the foreseeable future. *See Aldridge v. Saxey*, 242 Or. 238, 243-44 (1965) ("The interference with the use and enjoyment of land is not actionable unless it is substantial and unreasonable.").

Finally, factor five favors DA Construction. In assessing the effect on a plaintiff's enjoyment of life, health and property, Oregon courts often consider whether, because of a defendant's actions, a plaintiff has had to adjust daily living habits or ways of property enjoyment. *Jewett v. Deerhorn Enters., Inc.*, 281 Or. 469, 477 (1978). Plaintiff has not alleged or offered evidence that she had to adjust daily habits or ways of property enjoyment, let alone that any adjustment was unreasonable.

Considering all five factors, plaintiff has not alleged or provided evidence of an unreasonable interference with her private use or enjoyment of her land. Therefore, DA Construction's motion for summary judgment is granted with respect to plaintiff's nuisance claim.

2. *Trespass*

Plaintiff asserts a claim for trespass based on allegations that construction activities (1) violated setback rules by placing equipment and supplies and building a ditch between the array and her property, (2) caused increased traffic near her property, and (3) caused flooding or pooling of water on her property. DA Construction argues that it is entitled to summary judgment because plaintiff cannot show that DA Construction is responsible for an actual intrusion onto her land.

Under Oregon law,

> [a] trespass arises when there is an intrusion upon the land of another which invades the possessor's interest in the exclusive possession of his land. The intrusion may be caused by either intentional, negligent, reckless or ultrahazardous conduct.[] Whether the invasion of the plaintiff's interest is direct or indirect is immaterial in determining whether the invasion is trespassory.

*Martin*, 256 Or. at 565.

Plaintiff's allegations of setback violations and increased traffic do not state a claim for trespass because they do not assert intrusions that cause a physical consequence on her land. *See Williams v. Invenenergy, LLC*, No. 3:13-cv-01391-AC, 2014 WL 7186854, at *19 (D. Or. Dec. 16, 2014) (observing that '[a]lthough Oregon trespass law no longer requires a physical object to intrude on a person's property, it still requires a physical consequence to the property to support a trespass claim"). By

contrast, plaintiff's complaints of flooding or pooling water do assert some sort of physical intrusion onto and consequence on plaintiff's property.

Oregon courts have recognized a "water trespass" when a defendant artificially collects surface and groundwater and diverts it onto a plaintiff's property and the defendant knew or should have known that the water would end up on that property. *Gibson v. Morris*, 270 Or. App. 608, 613-16 (2015). However, courts have limited a water trespass to the "collection and redirection of water in a way that changed the flow's quantity and location when compared to the natural flow." *Id.* at 610 n. 1.

Plaintiff alleges that DA Construction caused a water trespass by building a drainage ditch about 10 feet from her property and by compacting the soil across the solar array property. Plaintiff asserts that the "compacted earth . . . does not allow water to percolate into the ground as [well as it did] when the soil was regularly tilled for planting crops[,]" which causes excess runoff. Resp. (doc. 124) at 11. She further alleges that the drainage ditch collects the runoff, allowing water to pool behind her property and that "[t]his added water invariably runs downhill to flood" her property. Am. Compl. at ¶ 108. To support her assertions, plaintiff provided photographs that appear to show water pooling on the solar array property and on her property and a channel of water between the solar array and her property that runs roughly parallel to the property line. The photographs do not show any surface connection between the water on the solar array property and the water on plaintiff's property. Plaintiff's evidence is not sufficient to show a genuine dispute of fact over whether DA Construction caused a water trespass.

First, as DA Construction points out, plaintiff has provided no evidence that DA Construction built the ditch. Anderson's declaration states that DA Construction followed plans prepared by a non-party engineering firm, and those construction plans do not call for a drainage ditch near plaintiff's property line. Moreover, in plaintiff's own photographs of the solar array construction, the drainage ditch does not appear until January 2018, months after DA Construction left the site.

Second, the circumstances plaintiff complains about are not a water trespass under Oregon law. Even if DA Construction built the ditch, the evidence does not show, and plaintiff does not argue, that the ditch diverts water directly onto her property. Instead, plaintiff asserts that the ditch and compacted soil causes water to flow from the solar array property to plaintiff's property at a faster rate or in greater quantities than before. But evidence in the record and plaintiff's own theory of trespass demonstrate that water naturally flows southwest from the solar array property towards plaintiff's property. Accordingly, DA Construction's actions did not cause a water trespass because they did not "redirect" the water flooding plaintiff's property "in a way that changed the flow's . . . location compared to the natural flow." *Gibson*, 270 Or. App. at 610 n. 1; *see also Garbarino v. Van Cleave et al.*, 214 Or. 554, 557-58 (1958) (reasoning that the "defendants had the right to install and use a system to drain the surface water from their lands into natural channels even though they thereby accelerated the flow of water onto the lower lands of plaintiff[,]" noting that the plaintiff did "not allege that defendants changed the place where the surface water from their property naturally flowed onto plaintiff's lands").

Accordingly, the Court concludes that DA Construction is entitled to summary judgment.

## CONCLUSION

As set forth above, defendant Silverton Land Co., LLC's Motion for Summary Judgment (doc. 120) is GRANTED and its Motion to Strike (doc. 142) is DENIED in part and GRANTED in part. Silverton Solar, LLC's Motion for Summary Judgment (doc. 145) is GRANTED. Defendant Dick Anderson Construction Company's Motion for Summary Judgment (doc. 112) is GRANTED.

IT IS SO ORDERED.

Dated this 20th day of September 2019.

*/s/ Ann Aiken*
ANN AIKEN
United States District Judge